677 F.2d 200
 118 EAST 60TH OWNERS, INC., Plaintiff-Appellant,
v.
BONNER PROPERTIES, INC. and Bertram F. Bonner, Defendants-Appellees.
 No. 68, Docket 81-7284.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 23, 1981.
Decided April 13, 1982.
 
 Alan E. Bandler, New York City for plaintiff-appellant.
 Lawrence W. Boes, New York City (Andrew N. Krinsky and Reavis & McGrath, New York City, on the brief), for defendants-appellees.
 Before NEWMAN and KEARSE, Circuit Judges, and DALY,* District Judge.
 NEWMAN, Circuit Judge:
 
 
 1
 Federal courts must regularly try to determine the content of state law in exercising diversity jurisdiction and must occasionally do so in exercising federal question jurisdiction; it is the diversity jurisdiction, however, that obliges federal courts to make the delicate accommodation between state substantive law and federal procedural law in adjudicating state-created causes of action. The subtlety of that process, compared to the relatively more straightforward adjudication of federal causes of action, is illustrated by this appeal from the denial of a declaratory judgment. The suit sought, among other things, to test the validity of a defense to enforcement of a commercial lease and a mortgage note. If the basis for the defense had been alleged affirmatively to secure rescission, modification, or an accounting, it would have encountered the bar of a state statute of limitations. Plaintiff in this diversity action relies on state law that permits an otherwise time-barred defense to be interposed against an adversary's claim. The District Court for the Southern District of New York (Lee P. Gagliardi, Judge) ruled that state law did not permit such a defense to be used to obtain a declaratory judgment of non-liability. We affirm because we conclude that use of the federal procedure of a declaratory judgment remedy in this case would undermine state substantive policies concerning the statute of limitations.
 
 
 2
 The corporate predecessor of defendant-appellee Bonner Properties, Inc. ("Bonner") erected an apartment building at 118 East 60th Street, New York, New York, in 1964. In 1969 and 1970, Bonner made plans for the building to become a residential cooperative apartment to be owned by its tenant-shareholders. As part of the deal plaintiff-appellant, the incorporated association of tenant shareholders, leased the building's commercial space to Bonner for a period of 30 years, assumed Bonner's outstanding first mortgage, and executed a purchase money second mortgage with Bonner.
 
 
 3
 Over 10 years later, on June 17, 1980, plaintiff commenced this diversity action, alleging that the commercial lease contained unfair and unconscionable terms that were not fully disclosed in the Offering Statement distributed to potential purchasers of the cooperative building. Plaintiff also alleged that by including such undisclosed terms in the lease defendants breached a fiduciary duty owed by promoters to purchasers. Plaintiff claimed that these wrongs entitled it to various forms of affirmative relief, including damages, an accounting, and rescission or modification of the lease and the mortgage. The District Court ruled, and plaintiff does not dispute on appeal, that all of such claims for affirmative relief are time-barred under New York law, which applies to this diversity action, Walker v. Armco Steel Corp., 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980); Ragan v. Merchants Transfer & Warehouse Co., 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Nevertheless, plaintiff asserts that the alleged prior wrongs afford it (a) a setoff to any further claims by defendant for payments due under the mortgage and lease, and (b) a defense in the event the defendant seeks to enforce the mortgage and lease obligations. Since defendants take the position that no prior wrongs occurred that would constitute a defense to any claims they might have under the mortgage and lease, plaintiff alleges a present controversy with the defendants,[1] and pursues on appeal its claim for a declaratory judgment to establish its non-liability.
 
 
 4
 To bring into focus the nature of the potential conflict between New York's substantive limitations policy and the federal declaratory judgment procedure, we must distinguish plaintiff's claim from the more typical suit in which a claim for a declaratory judgment encounters a limitations defense. When the declaratory judgment sought by a plaintiff would declare his entitlement to some affirmative relief, his suit is time-barred if the applicable limitations period has run on a direct claim to obtain such relief. What determines the applicable limitations period is "the basic nature of the suit in which the issues involved would have been litigated if the Declaratory Judgment Act had not been adopted." Romer v. Leary, 425 F.2d 186, 188 (2d Cir. 1970). Since the plaintiff has acknowledged that his claims for affirmative relief are time-barred, he likewise can secure no declaration of entitlement to such relief. Nevertheless, the plaintiff contends that he is entitled to a "defensive" declaration that he has a valid setoff to claims by the defendants and that he is not liable to the defendants. See Luckenbach Steamship Co. v. United States, 312 F.2d 545, 548-49 (2d Cir. 1963). Transposing the language of Romer from the context of a declaration of entitlement to affirmative relief, plaintiff contends that the "basic nature" of his declaratory judgment claim is the establishment of a defense. He then invokes N.Y.Civ.Prac.Law § 203(c) (McKinney 1972), which provides a partial exemption of defenses from the bar of a statute of limitations. Section 203(c) provides:
 
 
 5
 A defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed, except that if the defense or counterclaim arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends, it is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed.
 
 
 6
 Combining his contentions, plaintiff asserts that since New York law would permit him to assert his defense to a claim by defendants on the mortgage or lease, plaintiff can secure a declaration of the validity of his defense under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 (1976).
 
 
 7
 Since § 203(c) is a carefully constructed exception to New York's substantive law of limitations, we think analysis of plaintiff's contention must start with consideration of whether New York law permits a time-barred defense to be used to initiate a declaratory judgment action. Normally, the availability of state declaratory relief would be irrelevant to whether a federal court may grant such a remedy. Plainly the fact that a state might not have any declaratory remedy is "immaterial" to whether the federal remedy may be used. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 674, 70 S.Ct. 876, 880, 94 L.Ed. 1194 (1950).[2] But when a state that has a declaratory remedy withholds it in a particular class of cases in order to vindicate a state substantive policy, such as a limitations policy, it is entirely appropriate for a federal court to assess the impact of its grant of a declaratory remedy on that substantive policy of the state. See Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 298-301, 63 S.Ct. 1070, 1073-1074, 87 L.Ed. 1407 (1943); Beacon Construction Co. v. Matco Electric Co., 521 F.2d 392, 397-98 (2d Cir. 1975); Allstate Insurance Co. v. Charneski, 286 F.2d 238, 243-44 (7th Cir. 1960).[3]
 
 
 8
 The plain words of § 203(c) strongly imply that escape from a time bar is available only to a party that is called upon to defend. The statute contemplates interposing an otherwise time-barred defense to a complaint, and, then, only "to the extent of the demand in the complaint."
 
 
 9
 The history of the statute indicates that New York would not extend it, in the circumstances of this case, to permit the use of a time-barred defense to initiate a declaratory judgment action. The Practice Commentary indicates that § 203(c) codifies the doctrine of equitable recoupment.[4] See SCM Corp. v. Fisher Park Lane Co., 40 N.Y.2d 788, 358 N.E.2d 1024, 1026, 390 N.Y.S.2d 398, 401 (1976); id. 358 N.E.2d at 1030, 390 N.Y.S.2d at 404 (Cooke, J., dissenting). Under that doctrine a defense that would be time-barred as a claim for affirmative relief may be used to reduce an adverse recovery where the defense establishes an equitable defect inhering in the adverse party's claim. The doctrine is founded in considerations of fairness; it would be highly inequitable to permit a party to place a question before a court and then prevent the opposing party from disputing issues lying at the foundation of the claim. Bull v. United States, 295 U.S. 247, 262, 55 S.Ct. 695, 700, 79 L.Ed. 1421 (1935); Pennsylvania R. Co. v. Miller, 124 F.2d 160, 162 (5th Cir. 1941), cert. denied, 316 U.S. 676, 62 S.Ct. 1047, 86 L.Ed. 1750 (1942); Williams v. Neely, 134 F. 1, 4-5, 12-13 (8th Cir. 1904). The purposes underlying statutes of limitation-the prevention of stale litigation and the protection of repose-do not apply when a time-barred defense is asserted against a timely claim that initiates a lawsuit. See United States v. Western Pacific R. R., 352 U.S. 59, 72, 77 S.Ct. 161, 169, 1 L.Ed.2d 126 (1956). In fact, preventing such use of the defense would provide an incentive to delay bringing some claims until a defense would be time-barred. Marsh v. Richer, 68 Misc. 587, 125 N.Y.S. 245 (1910) (negligence defense to physician's claim for services performed).
 
 
 10
 In New York, the doctrine can be traced back at least as far as Maders v. Lawrence, 49 Hun. 360, 2 N.Y.S. 159 (S.Ct.1888), which involved an exchange of horses between the parties. Defendant Lawrence gave plaintiff Maders a promissory note for the difference in value between the horses. Years later, when Maders sued to enforce the note, Lawrence sought to defend on the ground that the horse, when he received it, was lame and had the heaves. The Court refused to accept Maders' contention that any defense based on a warranty theory was barred by the statute of limitations and upheld a jury verdict for defendant.
 
 
 11
 Courts in New York and elsewhere have emphasized the intrinsically defensive nature of the doctrine. When a party is "attacked," he can rely on the statute of limitations as a shield, but when a party is the "aggressor," equity precludes the use of the time bar as a sword. House v. Carr, 185 N.Y. 453, 460-65, 78 N.E. 171, 173-75 (1906) (Vann, J., dissenting); Kelly Asphalt Block Co. v. Brooklyn Alcatraz Asphalt Co., 190 A.D. 750, 757-58, 180 N.Y.S. 805, 810-11, modified, 191 A.D. 922, 181 N.Y.S. 941 (1920), modified, 232 N.Y. 304, 133 N.E. 899 (1922); Texas Water Supply Corp. v. Reconstruction Finance Corp., 204 F.2d 190, 195-96 & n.2 (5th Cir. 1953) (Texas law); Eddy v. Yellow Cab Co., 434 F.Supp. 447, 448 (N.D.Ill.1977) (Illinois law) (defendant as an "active litigant" against "passive" co-defendant may not avoid time bar on cross-claim). We have been unable to find any case in which the doctrine was applied in other than a defensive fashion. Even in a case like Williams v. Neely, supra, where a court of equity permitted a plaintiff to assert a defense that would otherwise be time-barred, the plaintiff asserted the defense to fend off an actively pursued claim of the defendant. "The complainants ha(d) long been involved in a tedious litigation," 134 F. at 14, and the defendant had already asserted in a court of law the claim against which the defense was being interposed.
 
 
 12
 Here plaintiff seeks to extend the intrinsically defensive doctrine beyond its confines. Plaintiff is certainly more of an aggressor than defendants. Defendants have done nothing concrete to change the basic relations between the parties as they have existed for over ten years. It is the plaintiff that has haled the defendants into court and disturbed the equilibrium between the parties. If the parties' current disagreement over the enforceability of the mortgage and lease ever escalates into a lawsuit initiated by the defendants, plaintiff will be able to assert its defenses. While no reported New York decision appears to have considered whether § 203(c) permits use of a time-barred defense to initiate an action for a declaratory judgment, we think that New York, in order to vindicate the substantive policies of its statute of limitations, would conclude that § 203(c) does not permit such use, at least where, as here, plaintiff is attempting to employ § 203(c) in other than a defensive fashion.[5]
 
 
 13
 We must therefore determine whether the federal procedural device of the Declaratory Judgment Act permits a diversity court to reach a result that could not be obtained in the courts of the forum state.[6] The state procedural rule of § 203(c) is an integral part of New York's substantive law of limitations. Use of the declaratory remedy in this case, contrary to § 203(c), would therefore directly undermine state substantive policies. Furthermore, the Declaratory Judgment Act is not phrased in absolutes. In cases of actual controversy, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201 (1976). We therefore do not encounter a statutory requirement in conflict with state policy, but only a permissive statutory device, which, if used, would directly conflict with an integral part of New York's substantive law of limitations.[7] Surely, it would be inappropriate to use the federal statute in a diversity action when declaratory relief would "needless(ly) obstruct( ) ... the domestic policy of the states," Great Lakes Dredge & Dock Co. v. Huffman, supra, 319 U.S. at 298, 63 S.Ct. at 1073. In the absence of a direct conflict between a federal statute or rule and the state policy,[8] we need not override the state substantive policy and can thus minimize friction in the federal-state relationship, curtail forum shopping possibilities, and prevent inequitable administration of the law resulting from the fortuity of diversity of citizenship. Walker v. Armco Steel Co., supra, 446 U.S. at 752-53, 100 S.Ct. at 1986, see Beacon Construction Co. v. Matco Electric Co., supra, 521 F.2d at 397-98; Allstate Insurance Co. v. Charneski, supra. We conclude that a federal declaratory remedy is unavailable in this case.
 
 
 14
 Our decision in Luckenbach Steamship Co. v. United States, supra, in which we permitted a declaratory judgment to secure a declaration of non-liability on an otherwise time-barred defense, is not to the contrary. Luckenbach involved a federal cause of action; we had no occasion to consider the appropriate analysis in a diversity case. Even in Luckenbach we paused to consider whether giving a declaratory judgment would conflict with the substantive policy of any other federal statute, 312 F.2d at 548-49; in a diversity case it is only natural that we consider possible conflicts with the state law being applied. Furthermore, the litigants in Luckenbach had already been involved in extensive litigation on related claims, American-Foreign Steamship Corp. v. United States, 291 F.2d 598 (2d Cir.), cert. denied, 368 U.S. 895, 82 S.Ct. 171, 7 L.Ed.2d 92 (1961), and the defense being asserted by the declaratory judgment plaintiff had matured to a greater degree than the defense of the plaintiff in this case. Luckenbach Steamship Co. v. United States, 207 F.Supp. 68, 69 (S.D.N.Y.1962) (United States had already made claim in correspondence), rev'd on the merits, 312 F.2d 545, 547 (2d Cir. 1963) (Government had asserted claim but had failed to bring suit).
 
 
 15
 We conclude that a declaratory judgment was properly denied.[9] Judgment affirmed.
 
 
 
 *
 The Honorable T. F. Gilroy Daly of the United States District Court for the District of Connecticut, sitting by designation
 
 
 [1]
 We agree with the plaintiff's implicit premise that it need not fail to make payments in violation of its lease or mortgage obligations in order to have a justiciable controversy concerning its obligation to make such payments
 
 
 [2]
 The absence of a declaratory judgment statute in Oklahoma, which Skelly Oil noted, was not remedied until 1961. 12 Okla.Stat. §§ 1651-1657
 
 
 [3]
 Charneski has been criticized, see e.g., 10 C. Wright & A. Miller, Federal Practice and Procedure § 2756 (1973); Comment, The Constitutional Power of Congress to Control Procedure in the Federal Courts, 56 Nw.U.L.Rev. 560 (1961), but much of the criticism centers on the correctness of the Court's determination that a federal declaratory judgment would be inconsistent with substantive state policy, see id. at 569-71
 
 
 [4]
 Section 203(c) expanded the New York version of the doctrine to, among other things, include tort claims in addition to claims based on contract. This expansion of the doctrine is not relevant to this case
 
 
 [5]
 Construction of § 203(c) not to permit initiation of litigation by the plaintiff in the circumstances of this case accords more significance to the limitations policy of repose than to the policy of avoiding litigation of stale claims. Plaintiff's litigation of its defense is in fact further deferred, cf. Luckenbach Steamship Co. v. United States, supra, 312 F.2d at 550, although, depending upon events, such litigation may never occur
 
 
 [6]
 The fact that an outcome in a state court would be different than in a federal court only creates the problem and does not resolve it. Hanna v. Plumer, 380 U.S. 460, 468, 85 S.Ct. 1136, 1142, 14 L.Ed.2d 8 (1965); id. at 475, 85 S.Ct. at 1146 (Harlan, J., concurring) ("(T)he 'outcome-determinative' test of Guaranty Trust Co. v. York, 326 U.S. 99, (65 S.Ct. 1464, 89 L.Ed. 2079), if taken literally, proves too much, for any rule, no matter how clearly 'procedural,' can affect the outcome of litigation if it is not obeyed.")
 
 
 [7]
 If a federal statute or rule required a result in conflict with a state's substantive limitations policy, there would arise the issue of whether Congress has the power to require such a result, or whether the application of such a rule to require such a result is authorized by the Rules Enabling Act, 28 U.S.C. § 2072 (1976). See Hanna v. Plumer, supra, 380 U.S. at 471, 85 S.Ct. at 1144. On the facts of this case, where the plaintiff's suit is brought many years after state law permits it to be brought, those issues would be more troublesome than in circumstances like those in Ragan v. Merchants Transfer & Warehouse Co., supra, where the federal rule, if determinative, would have permitted a suit that was untimely under state law by only 89 days, 337 U.S. at 531, 69 S.Ct. at 1234, a consequence with "no effect on the primary stages of private activity from which torts arise, and only the most minimal effect on behavior following the commission of the tort." Hanna v. Plumer, supra, 380 U.S. at 477, 85 S.Ct. at 1147 (Harlan, J., concurring). "(A) court, in measuring a Federal Rule against the standards contained in the Enabling Act and the Constitution, need not wholly blind itself to the degree to which the Rule makes the character and result of the federal litigation stray from the course it would follow in state courts ...." Hanna v. Plumer, supra, 380 U.S. at 473, 85 S.Ct. at 1145 (emphasis added)
 
 
 [8]
 Though authority for a declaratory judgment is contained in Fed.R.Civ.P. 57, we view the issue as arising primarily under the Declaratory Judgment Act rather than the Rules Enabling Act, 28 U.S.C. § 2072 (1976), or the Rules of Decision Act, 28 U.S.C. § 1652 (1976). See Ely, The Irrepressible Myth of Erie, 87 Harv.L.Rev. 693, 698, 705-06 (1974) (distinguishing between application of state law in the presence of (1) federal statute, (2) Federal Rule of Civil Procedure enacted pursuant to the Rules Enabling Act, and (3) judge-made federal rule whose applicability is affected by the Rules of Decision Act); Developments in the Law-Declaratory Judgments, 62 Harv.L.Rev. 787, 804-05 (1949) (since declaratory judgments are authorized by Act of Congress, Rules of Decision Act does not govern applicability of state law). We would also construe Fed.R.Civ.P. 57, which, like the Declaratory Judgment Act, is permissive, as not providing a federal declaratory remedy in this case. Cf. Walker v. Armco Steel Corp., supra, 446 U.S. at 747-50, 100 S.Ct. at 1983-85 (construing Fed.R.Civ.P. 3 not to conflict with state limitations period); Ragan v. Merchants Transfer & Warehouse Co., supra (same); see also Hanna v. Plumer, supra, 380 U.S. at 470, 85 S.Ct. at 1143
 
 
 [9]
 In light of our disposition of the case, we need not decide whether under New York law plaintiff's defense arises out of the same transaction or occurrence as defendants' potential claim so as to fall within the coverage of § 203(c). Compare Public Loan Co. v. Hyde, 47 N.Y.2d 182, 390 N.E.2d 1162, 417 N.Y.S.2d 238 (1979) (counterclaim under Truth in Lending Act to a claim demanding payment on a promissory note a non-time-barred defense under § 203(c) because it arose out of the transaction sued upon), 35 Park Ave. Corp. v. Campagna, 48 N.Y.2d 813, 399 N.E.2d 1144, 424 N.Y.S.2d 123 (1979) (defense of unconscionability might be available under § 203(c)), and Lincoln First Bank v. Rupert, 60 A.D.2d 193, 400 N.Y.S.2d 618 (4th Dep't 1977) (counterclaim under New York Retail Installment Sales Act could be asserted as a § 203(c) defense since it arose from the retail installment transaction upon which plaintiff's action depends), with SCM Corp. v. Fisher Park Lane Co., 40 N.Y.2d 788, 358 N.E.2d 1024, 390 N.Y.S.2d 398 (1976) (§ 203(c) does not apply to landlord's counterclaim for reformation of lease in tenant's action for overpaid rent in an arbitration proceeding)